## +UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L'ASSOCIATION DES AMÉRICAINS ACCIDENTELS, *et al.*<br><br>*Plaintiffs*<br><br>*v.*<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*<br><br>*Defendants.* | Civil Action No. 21-cv-2933-TNM<br><br>**ORAL ARGUMENT REQUESTED PER LCvR 78.1** |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Civil Rule 7(h)(1) and this Court's Standing Order, §14(A) (ECF 8), Plaintiffs respectfully submit that there exists no issue of material fact as to the following facts, which support the Court's entry of summary judgment in favor of Plaintiffs for the reasons set forth in the accompanying memorandum and declarations:

(1) The following declarations support Plaintiffs' Cross-Motion for Summary Judgment:

| | |
|---|---|
| 1 | Fabien Lehagre Declaration |
| 2 | Martin Kracklauer Declaration |

| 3 | Kristopher Lazarz Declaration |
|---|---|
| 4 | Sofiane Thoulon Declaration |
| 5 | Olivier Vaury Declaration |
| 6 | Carole Noyer Declaration |
| 7 | Nina Nelson Declaration |
| 8 | Dominique Dumant Declaration |
| 9 | Flore Dupoux Declaration |
| 10 | Deborah Lee Soloway Declaration |
| 11 | John Warren Heestand Declaration |
| 12 | Garret Russell Anderson Declaration |
| 13 | Esther Jenke Declaration |
| 14 | Patricia Anne O'Conner Gorlier Declaration |
| 15 | Bruce Newman Declaration |
| 16 | Teresa Cumpston Bird Declaration |

| 17 | Frederique Boyer Declaration |
| 18 | Daniel Edward Neary Declaration |
| 19 | Jane Rachel Heller Declaration |

(2) L'Association des Américains Accidentels ("AAA") is a Paris-based non-profit organization that was established in 2017 under French law. AAA's members include individuals described as "Accidental Americans."  The goal of the AAA is to defend and represent the interests of persons holding American nationality, but residing outside the United States, against the harmful effects of the extraterritorial nature of the U.S. law.  See https://www.americains-accidentels.fr/page/234149-nos-objectifs.  Fabien Decl., ¶¶3-7.

(3) AAA includes members who wish to renounce their U.S. citizenship but are either unable to do so because the government has suspended voluntary expatriation services or because they are being placed on indefinite waitlists. *See* Fabien Decl., ¶13. *See also*

      1.  Olivier Vaury Declaration

      2.  Carole Noyer Declaration

      3.  Nina Nelson Declaration

      4.  Dominique Dumant Declaration

      5.  Flore Dupoux Declaration

(members of AAA who seek to renounce U.S. citizenship).

(4) Plaintiff Sofiane Thoulon is a member of AAA. Sofiane Thoulon Decl., ¶15.

(5) AAA has 1,414 members. Membership in AAA is voluntary and can be achieved by filing a form on AAA's website. Fabien Decl., ¶12;

(6) Approximately 852 AAA members wish to renounce their U.S. citizenship. Fabien Decl., ¶13.

**Detrimental impact of being a U.S. citizen abroad**

(7) In 2010 the Foreign Account Tax Compliance Act ("FATCA") — a bulk data collection program requiring foreign financial institutions to report to the IRS detailed information about the accounts of U.S. citizens living abroad– went into effect.

(8) According to all estimates, renunciations have been on the rise since 2010, the year FATCA was enacted.

(9) According to a 2014 study conducted by the group "Democrats Abroad", almost one-quarter (22.5%) of Americans living abroad who attempted to open a savings or retirement account and 10% of those who attempted to open a checking account were unable to do so.  In 2014, it was estimated that one million Americans living abroad have had bank accounts closed because of FATCA. *See also* "2014 FATCA Research Project: Stories of FATCA Affecting Everyday Americans Everyday," available at https://www.finance.senate.gov/imo/media/doc/Att%205%20Democrats%20 Abroad%202014%20FATCA%20Research%20%20Stories%20of%20FATC

A%20-%20Affecting%20Everyday%20Americans%20Every%20Day.pdf

(last accessed on May 17, 2022) (surveying the experiences of U.S. citizens abroad related to FATCA, including account closures (at 5-6); refusal to provide financial services (at 6-7); disruption to retirement saving and planning (at 7-9); strained relationships (at 9-12); employment, promotions and business partnerships denied (at 12-14). See also "Reviewing the Unintended Consequences of the Foreign Account Tax Compliance Act," Hearing Before the Subcommittee on Government Operations, 1st Sess., 115th Cong., (April 6, 2017), available at https://www.govinfo.gov/content/pkg/CHRG-115hhrg28503/pdf/CHRG-115hhrg28503.pdf (last accessed May 17, 2022), at 1-61 (testimony of detrimental effects of FATCA on U.S. citizens abroad).

(10)   In addition to causing Americans overseas to lose access to basic financial services abroad, FATCA has also had a detrimental impact on U.S. citizens living abroad at work and at home. Many have reported that they are being denied consideration for promotions at their jobs, particularly with respect to high level positions, because of the concomitant compliance burdens foisted on employers by FATCA. Indeed, in the study by "Americans Abroad" (www.americansabroad.org), 5.6% of respondents reported that they had been denied a position because of FATCA. Others reported difficulty opening a business or partnering with others in joint ventures because of obstacles created by FATCA.

(11)   The daily burdens of U.S. citizenship for Americans residing abroad are documented by the several declarations.

(12)   Plaintiff Ms. Thoulon's bank accounts have been frozen numerous times because of her U.S. citizenship.  Banks have also refused to extend her credit due to her U.S. citizenship.  Sofiane Thoulon Decl., ¶¶11-20. Ms. Thoulon has been left with little choice to open an account with a €9 commission fee for each transfer received.

(13)   Due to his U.S. citizenship, Plaintiff Mr. Lazarz is unable to secure finance to purchase a home. This, in turn, has prevented him from purchasing a residence in order to provide sick daughter with a stable living. Kristopher Lazarz Decl., ¶¶5-7.

(14)   Nina Nelson, a member of AAA wishing to voluntarily renounce, describes the daily stress of being an American abroad and states: "Daily, routine transactions, have become complicated and costly for people like me." *See* Nina Nelson Decl., ¶¶6-9.

(15)   See also:

   1.   James Fallows, "The Fatca Menace!," The Atlantic (Jan. 3, 2012), available at https://www.theatlantic.com/international/archive/2012/01/the-fatca-menace/250763/ (last accessed on May 17, 2022).

   2.   "Middle-Class Americans Overseas Take the Brunt of

FATCA Impact," GREENBACK EXPAT TAX SERVICES (Sept. 22, 2014), available at https://www.greenbacktaxservices.com/blog/middle-class-americans-overseas-take-brunt-fatca-impact/ (last accessed on May 17, 2022) (surveying detrimental effect of FATCA on accounts, relationships and lost business opportunities).

3. Robert W. Wood, "FATCA Repeal Efforts Just Failed, But Is It A Good Law?," FORBES (May 30, 2015), available at https://www.forbes.com/sites/robertwood/2015/03/30/fatca-repeal-efforts-just-failed-but-is-it-a-good-law/?sh=30dfb0724535 (last accessed on May 17, 2022) (reporting that FATCA "has damaged the lives of over 7 million Americans abroad. Many can no longer open or maintain bank accounts where they live, get mortgages, or run their local businesses or households without difficulty. Many institutions around the world simple will not--perhaps cannot--open and maintain accounts for Americans, financial pariahs.")

4. Vivienne Walt, "Why 'Accidental Americans' Are Desperate to Give Up Their U.S. Citizenship," TIME

(Dec.       23,       2020),       available       at

https://time.com/5922972/accidental-americans-fatca/

(last accessed on May 17, 2022).

**Suspension and delay of renunciation services**

(16)   In or around March 2020 at or around the time that COVID-19 was
       formally declared a pandemic, the U.S. government began suspending all
       voluntary expatriation services throughout the world. As a result, it
       became impossible to renounce U.S. citizenship. *See* Government's
       Statement of Facts, ¶¶1-6.

(17)   Beginning in September-October 2021, certain U.S. mission began
       providing renunciation services. *See* Government's Statement of Facts,
       ¶10-27.

(18)   Those U.S. missions that have begun commencing renunciation services
       are employing a waitlist policy.

(19)   Thus, for example, the U.S. embassy in Bern, Switzerland has a 700-
       person waitlist. *Id.*, ¶25.

(20)   The U.S. embassy in Frankfurt, Germany has a 900-person waitlist. *Id.*,
       ¶¶19, 24.

(21)   It is unclear how many people are on the Paris embassy waitlist. *Id.*,
       ¶¶18, 21, 22.

(22)   As of the filing of this document, the average waiting time for the named
       Plaintiffs to receive an appointment to renounce is 14.6 months:

| Named Plaintiff | Waiting Period |
|---|---|
| Lilian Pam | 23 months |
| Joshua Grant | 20 months |
| Martin Kracklauer | 18 months |
| Sofiann Thoulon | 15 months |
| Philip Boeffard | 13 months |
| Stephen Collins | 8 months |
| Kristopher Lazarz | 9 months |
| Christopher Bousigues | 11 months |
| **Avg.** | **14.6 months** |

(23)   The average waiting time to receive an interview for non-immigrant visa services is significantly lower.

See   https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/wait-times.html

**The interview for renunciation is generally short and straightforward**

(24)   The renunciation interview usually does not last more than 5-10 minutes. *See*

1. Martin Kracklauer Decl., ¶7 (five-minute interview at U.S. mission in Milan, Italy);

2. Garret Russell Anderson Decl., ¶3 (five-minute interview at U.S. mission in Paris, France);

3. John Warren Heestand Decl., ¶3 (five-minute interview at U.S. mission in Yerevan, Armenia);

4. Diana Lee Barden Decl., ¶3 (five-minute interview at U.S. mission in Naples, Italy);

5. Frederique Boyer Decl., ¶3 (five-minute interview at U.S. mission in Marseille, France);

6. Patricia Anne O'Conner Gorlier Decl., ¶3 (five-minute interview at U.S. mission in Paris, France);

7. Daniel Edward Neary Decl., ¶3 (five-minute interview at U.S. mission in Kuala Lumpur, Malaysia);

8. Esther Jenke Decl., ¶3 (ten-minute interview at U.S. mission in Frankfurt, Germany);

9. Bruce Evans Newman Decl., ¶3 (ten-minute interview at U.S. mission in Novia Scotia, Canada);

10. Cumpston Bird Decl., ¶3 (ten-minute interview at U.S. mission in Melbourne, Australia);

11. Jane Rachel Heller Decl., ¶3 (ten-minute interview at U.S. mission in Amsterdam, the Netherlands);

12. Deborah Lee Soloway Decl., ¶3 (eight-minute interview at U.S. mission in Montreal, Canada).