# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| L'ASSOCIATION DES AMÉRICAINS ACCIDENTELS, *et al.*<br><br>       *Plaintiffs*<br><br>*v.*<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*<br><br>       *Defendants.* | Civil Action No. 1:21-cv-2933-TNM<br><br>**ORAL ARGUMENT REQUESTED PER LCvR 78.1** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

*/s/ L. Marc Zell*
L. Marc Zell
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES, LLC
1345 Ave. of the Americas
2nd Floor
New York, NY 10105
(202)-971-1349
*Email: mzell@fandz.com*

*/s/ Noam Schreiber*
Noam Schreiber, *of counsel*
ZELL, ARON & CO.
34 Ben Yehuda St.
15th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300

*Email: schreiber.noam@gmail.com*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT ..................................................................................................................3

   A.  THE SUSPENSION AND DELAY OF VOLUNTARY RENUNCIATION
SERVICES VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT ......................................................................................................3

     1.  The right to voluntarily expatriate is a fundamental right...........................3

     2.  The right to voluntarily expatriate is the proper
description of the right at issue...........................................................................4

     3.  The *suspension* of renunciation services does not
survive strict scrutiny .........................................................................................5

     4.  The current delay in renunciation services does not
survive strict scrutiny .........................................................................................7

   B.  PLAINTIFFS ARE ENTITLED TO RELIEF UNDER APA §706(1) ..............10

     1.  The government has a duty to provide renunciation services, including
appointments ....................................................................................................10

     2.  The *TRAC* factors favor Plaintiffs ...............................................................11

       (i)  The rule of reason and timetable factors weigh in
favor of Plaintiffs ...........................................................................................11

       (ii)  The nature of the interest prejudiced and human
welfare factors weigh in favor of Plaintiffs ....................................................12

       (iii)  Processing renunciation services without delay
will not affect higher priority agency activities...............................................13

       (iv)  The agency impropriety factor weighs in favor of Plaintiffs .................14

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Dobbs v. Jackson Women's Health Org.*,
  -- S. Ct. --, 2022 WL 2276808 (U.S. June 24, 2022)........................................ 1, 2, 5
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  --S. Ct. -- , 2022 WL 2251305 (U.S. June 23, 2022)............................................ 4, 5
*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ........................................................................................ 6
*Talbot v. Jansen*,
  3 U.S. (3 Dall.) 133 (1795) .............................................................................. 4
*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) .................................................................................... 6


**Cases**

*Am. Hosp. Ass'n v. Burwell*,
  812 F.3d 183 (D.C. Cir. 2016)..................................................................... 13, 14
*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*,
  418 F.3d 600 (6th Cir. 2005) ........................................................................... 5
*Church of Am. Knights of Ku Klux Klan v. City of Gary, Indiana*,
  334 F.3d 676 (7th Cir. 2003) ........................................................................... 5
*Gomez v. Biden*,
  2021 WL 1037866 (D.D.C. Feb. 19, 2021)........................................................ 8
*Gomez v. Trump*,
  485 F. Supp. 3d 145 (D.D.C. 2020)........................................................... 15, 16
*In re Look Tin Sing*,
  21 F. 905 (C.C.D.Cal. 1884)............................................................................ 1
*Lozada Colon v. U.S. Dep't of State*,
  2 F. Supp. 2d 43 (D.D.C. 1998)....................................................................... 4
*Mays v. Albert M. "Bo" Robinson Assessment & Treatment Ctr.*,
  2020 WL 4040843 (D.N.J. July 17, 2020) ........................................................ 9
*Milligan v. Pompeo*,
  502 F. Supp. 3d 302 (D.D.C. 2020)........................................................... 15, 16
*Pushkar v. Blinken*,
  2021 WL 4318116 (D.D.C. Sept. 23, 2021) .................................................... 12
*Scott v. United States*,
  2014 WL 2807652 (E.D. Cal. June 20, 2014)..................................................... 3
*Sream, Inc. v. Sha Sultana Inc.*,
  2020 WL 8816344 (S.D. Fla. Aug. 20, 2020)..................................................... 9

*_Telecomms. Research & Action Ctr. v. FCC,_
  750 F.2d 70 (D.C. Cir. 1984)........................................................................ 10
_United States v. Allen,_
  2022 WL 1532371 (9th Cir. May 16, 2022)................................................ 6
_Vazquez Diaz v. Commonwealth,_
  487 Mass. 336 (2021) ................................................................................... 9

**Constitutional Provisions**

U.S. CONST. amend. V. ...................................................................... 1, 3, 7

**Statutes**

5 U.S.C. §706.................................................................................................. 3
5 U.S.C. §706(2) .......................................................................................... 15
8 U.S.C. §1481(a)(5)....................................................................................... 4
26 U.S.C. §877A ........................................................................................... 15

**Other Authorities**

Eileen P. Scully,
  BARGAINING WITH THE STATE FROM AFAR: AMERICAN CITIZENSHIP IN TREATY PORT
  CHINA, 1844-1942,
  Columbia University Press (2001) ........................................................ 15
Nancy L. Green,
  _Expatriation, Expatriates, and Expats: The American Transformation of a_
  _Concept,_
  114 THE AM. HIST. REV. 2 (2009) ............................................................. 15

**PRELIMINARY STATEMENT**

The right to voluntarily expatriate is a fundamental right, deeply rooted in our history and implicit in the concept of ordered liberty, protected by the Due Process Clause of the Fifth Amendment. U.S. CONST. amend. V. *See Dobbs v. Jackson Women's Health Org.*, -- S. Ct. --, 2022 WL 2276808, at *7 (U.S. June 24, 2022). Restrictions on the right to renounce U.S. citizenship in the form of blanket suspensions and indefinite delays are subject to strict scrutiny and should be stricken unless they are necessary to further a compelling governmental interest.

The government, in its opposition brief [ECF 21, "Gv't Opp."], denies that the right of expatriation is fundamental. According to the government, it may impose any limitations on the right to expatriate, including full-blown suspensions and indefinite delays on the services necessary to exercise that right.

The government's position ignores history and reality. It is beyond question that the right to voluntarily renounce U.S. citizenship is a natural and fundamental right. The right to renounce is not only as old as the Republic itself, but is a necessary element of freedom, liberty and happiness. *In re Look Tin Sing*, 21 F. 905, 906-907 (C.C.D.Cal. 1884) (The right to expatriate "would seem to follow from the greater right proclaimed to the world in the memorable document in which the American colonies declared their independence and separation from the British crown, as belonging to every human being,— God-given and inalienable,— the right to pursue his own happiness."). [*See also Plaintiffs' Memorandum of Points and Authorities In*

1

*Opposition To Defendants' Motion To Dismiss Or, In The Alternative For Summary Judgment And In Support Of Plaintiffs' Cross-Motion For Summary Judgment* (ECF 19-1), "Pls.' Br.", at 10-19]. This right meets all the requirements laid down by the Supreme Court's recent Substantive Due Process jurisprudence in *Dobbs*. The government does not seriously contend otherwise. Instead, it tries to confuse the issue by delving into a syntactical symposium concerning the proper description of the right. As shown below, the government's analysis is both wrong and irrelevant.

The government has utterly failed to show how the suspension and delay of renunciation services are ***necessary*** to further the governmental interest in battling COVID-19. As for the *suspension*, there can be no doubt that there were less restrictive means than a complete shutdown of renunciation services to prevent the spread of the pandemic.

Moreover, the current *delay* in renunciation services cannot be *necessary* when, at the same time, the government provides non-immigrant visa ("NIV") services to non-citizens at an accelerated pace. Had the government seriously considered the nature of the right at issue, it would have correctly prioritized between NIV services for non-citizens and renunciation services for U.S. citizens.

For these reasons, both the suspension and delay of renunciation services should be declared unconstitutional under the Due Process Clause of the Fifth Amendment.[1]

**ARGUMENT**

**A. THE SUSPENSION AND DELAY OF VOLUNTARY RENUNCIATION SERVICES VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT[2]**

**1. The right to voluntarily expatriate is a fundamental right**

Just as it failed to recognize Plaintiffs' constitutional right in shutting down and delaying renunciation services during the pandemic, the government in its opposition utterly ignores Plaintiffs' constitutional arguments. [Pls.' Br., at 10-19; Gv't Opp., at 21-22, fn. 5]. In a lonesome footnote, the government states that courts have "recognized the legality of limitations on the ability to relinquish U.S. citizenship without applying strict scrutiny to such limitations." *Id*. The cases cited by the government did not engage in any constitutional analysis. *Scott v. United States*, 2014 WL 2807652 (E.D. Cal. June 20, 2014), cited by the government, is a dismissal of a *pro se* complaint of an incarcerated individual who wished to renounce

---

[1] As we discuss below, for similar, although certainly not identical reasons, the government's actions do not comport with Administrative Procedure Act, 5 U.S.C. §706 ("APA").

[2] This Court cannot avoid the constitutional issue presented here by deciding the case under the APA. As we have shown, the APA cause of action depends inextricably on the right to expatriate. Furthermore, even if the Court decides to grant the government's motion for summary judgment on their APA claims, Plaintiffs' constitutional claims must be addressed.

under 8 U.S.C. §1481(a)(5). *Lozada Colon v. U.S. Dep't of State*, 2 F. Supp. 2d 43, 45 (D.D.C. 1998), also cited by the government, merely concludes that the plaintiff failed to meet the criteria to expatriate. *Id.* (Assuming, without deciding, that expatriation is a natural right, but concluding that the plaintiff failed to meet "the relevant criterion of 'intent' needed to expatriate.").

Like other fundamental rights, Plaintiffs do not contend that the right to expatriate is absolute. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, --S. Ct. -- , 2022 WL 2251305, at *39 (U.S. June 23, 2022), *Kavanaugh, J., concurring*. This lawsuit does not challenge the constitutionality of the statutory and regulatory conditions for voluntary expatriation under 8 U.S.C. §1481(a)(5), other than the suspension/delay.

From the earliest days of the Republic, it was recognized that the right to voluntarily expatriate could be subject to procedural requirements. *See Talbot v. Jansen*, 3 U.S. (3 Dall.) 133 (1795) (Supreme Court recognized a right of expatriation before concluding that the defendant in the case had failed to follow the correct procedures for renouncing U.S. citizenship.); *Lozada*, 2 F. Supp. 2d, at 45. However, that the government may impose certain conditions on the right to renounce does not mean that all such requirements are permissible.

## 2. The right to voluntarily expatriate is the proper description of the right at issue

In its attempt to avoid strict scrutiny, the government insists that the proper description of the right at issue is the right to expatriate "within days or weeks of

4

requesting to do so." [Gv't Opp., at 19]. This is false.  Plaintiffs clearly defined the right at issue as the right to voluntarily renounce *vel non*. Plaintiffs then went on to plead that the suspension and delay of renunciation appointments was an unconstitutional burden for failure to satisfy strict scrutiny. [*See* ECF 5, ¶¶72-81; ECF 12, ¶¶73-82].

In mischaracterizing Plaintiffs' constitutional claims, the government conflates the recognition of the right in the first place with the government's ability (or lack thereof) to constitutionally restrict that right.   *See Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 605 (6th Cir. 2005) (holding that any "notice period is a substantial inhibition on speech" without examining whether the First Amendment includes a fundamental *right to speech **without prior notice**.). See also Church of Am. Knights of Ku Klux Klan v. City of Gary, Indiana*, 334 F.3d 676 (7th Cir. 2003) (same). *See also Dobbs*, at \*9-23 (discussing whether right to abortion exists under the constitution without any "careful description" analysis); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, --S. Ct. -- , 2022 WL 2251305 (U.S. June 23, 2022) (finding unconstitutional New York's "proper cause" requirement for issuance of concealed carry permits, without "careful description" analysis for Second Amendment rights).

### 3. The *suspension* of renunciation services does not survive strict scrutiny

In their opening brief, Plaintiffs demonstrated that a ***blanket suspension*** of renunciation services cannot survive strict scrutiny because, among other things, the

government clearly could have continued providing these services during the pandemic – as it did with other services. [Pls.' Br., at 21-24]. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

The government does not contend otherwise. Instead, the government analyzes the suspension as if it were no more than a delay. [Gv't Opp., at 22-23]. This is obviously wrong because the government's suspension had the effect of ceasing all operations in connection with renunciation. The suspension did not merely retard the scheduling process; it shut it down altogether; no appointments were scheduled or conducted.

The government's suspension of renunciation services fails strict scrutiny because there were less restrictive measures available other than a full-blown suspension to address the governmental interest in reducing the spread of COVID-19. *Roman Cath. Diocese*, 141 S. Ct. at 67 (a restriction on a fundamental right of free exercise not deemed necessary when less restrictive rules are available to combat the spread of COVID-19); *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (narrow tailoring requires the government to show that measures less restrictive could not address its interest in reducing the spread of COVID-19); *United States v. Allen*, 2022 WL 1532371, at *7 (9th Cir. May 16, 2022) (a total ban on public access to courtroom due to COVID-19 is not narrowly tailored because video streaming would have been less restrictive). The government failed to show that measures less restrictive could not address its interest in reducing the spread of COVID-19.

The fact that the government continued providing other services for non-citizens – such as NIV services — without suspending them further demonstrates that it was not *necessary* to institute a blanket suspension of U.S.-citizen renunciation services. [Pls.' Br., at 23-24]. The government attempts to refute this by arguing that there is no requirement that it treat its "services neutrally— giving them equal priority." [Gv't Opp., at 25]. The government's argument misses the mark. The question at issue is whether a blanket suspension is *necessary* to advance the government's interest in combating a pandemic. The government is not free to ignore the constitutional rights of U.S. citizens in favor of non-citizen applicants for consular services. In other words, by preferring NIV services for non-citizens over renunciation services for U.S. citizens, the government effectively concedes that the wholesale suspension was never necessary and, therefore, unconstitutional in contravention of the Due Process Clause of the Fifth Amendment.

### 4. The current delay in renunciation services does not survive strict scrutiny

Plaintiffs ask this Court to rule that the current delay in scheduling renunciation appointments is unconstitutional because the government could provide these services at a faster rate. The government stubbornly insists that it has unfettered discretion to prioritize as it sees fit and it prefers prioritizing NIV services for foreigners over renunciation services for U.S. citizens. [Gv't Opp., at 27-28].

The government seeks to reinforce this argument by making the unsupported and self-serving claim that NIV services "support the U.S. economy" and "provide

humanitarian assistance." [Gv't Opp., at 28; Benning Decl. (ECF 21-1), ¶¶19-20, (describing a variety of visa categories)].[3] However, the government conveniently ignores the fact that during 2021, it issued 13,449 B1 visas (business); **814,957 B1/B2 visas** (tourism and business); 2,492 B2 visas (tourism).[4] In 2020, the government issued **2,164,021 B1/B2 visas** (!).[5] Had the government weighed its priorities correctly in deference to the rights of U.S. citizens and devoted even a fraction of the resources it placed on "business and pleasure" services for foreigners, thousands of U.S. citizens abroad – suffering daily due to their U.S. citizenship – would have been able to renounce and begin a new chapter in their lives. The government's failure to provide any explanation for this blatant discrepancy shows that the current waitlist policy is far from necessary to further a compelling government interest. *Gomez v. Biden*, 2021 WL 1037866 (D.D.C. Feb. 19, 2021) (government failed to provide explanation why certain type of visa is given "low priority.").

Moreover, the government need not necessarily reappropriate staff to shorten the renunciation waiting lists. If the government so desires, it can make the renunciation process more efficient and faster by utilizing modern communications

---

[3] The Benning Decl. (at ¶20) discusses at length UN-based NIVs (classified as G4 visas). However, the government issued 15,016 G4 visas in 2021, less than one percent of total NIVs issued in 2021, totaling 2,792,083.

[4] This is more than half the total amount of NIVs issued during fiscal year 2020 which was 4,013,210. *See* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2021NIVWorkloadbyVisaCategory.pdf. (attached here as **Exhibit 1**).

[5] https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2020NIVWorkloadbyVisaCategory.pdf (attached here as **Exhibit 2**).

technology and permit remote renunciations. Nothing in the statute or regulations requires that renunciants physically travel to a U.S. post and physically appear before a consulate official. 8 U.S.C. §1481(a)(5). The government brushes this off by stating "remote renunciation appointments are not an option" due to the language of the statute requiring an individual "seeking to take the oath of renunciation must do so 'before a diplomatic or consular officer of the United States in a foreign state.'" [Gv't Opp., at 28; 8 U.S.C. §1481(a)(5)]. However, the statutory language requiring the renunciation take place "before a diplomatic or consular officer" does not mean that remote renunciations are not allowed. Courts regularly order parties and witnesses to appear *before* the court via Zoom video conferencing. *See, for example, Sream, Inc. v. Sha Sultana Inc.*, 2020 WL 8816344, at *1 (S.D. Fla. Aug. 20, 2020) ("Mr. Asif Virani shall appear before this Court via Zoom video conference"); *Mays v. Albert M. "Bo" Robinson Assessment & Treatment Ctr.*, 2020 WL 4040843, at *2 (D.N.J. July 17, 2020) ("Mr. Moleins must appear before the Court for an Order to Show Cause hearing via Zoom conference"). If the court system has employed Zoom and related technology in administering justice, the State Department can employ the same to assess the voluntariness of an adult's wish to renounce her U.S. citizenship. *Cf. Vazquez Diaz v. Commonwealth*, 487 Mass. 336, 349 (2021) (virtual evidentiary hearing during the pandemic is not a per se violation of a defendant's right to be present, to confrontation, to a public hearing, or to effective assistance of counsel; videoconferencing technology can create a close approximation of the courtroom setting).   Despite the government's protestations, permitting remote

renunciations will allow the government to meet its statutory duty to assess the voluntary intent of the renunciant, especially in "straightforward cases." [*See* Gv't Opp., at 7].

## B. PLAINTIFFS ARE ENTITLED TO RELIEF UNDER APA §706(1)

### 1. The government has a duty to provide renunciation services, including appointments

As previously discussed [Pls.' Br., at 29-30], the government's duty to provide voluntary renunciation services is clear and stems from both the Constitution, the statute, the regulations and basic principles of administrative law. The government argues that Plaintiffs cannot make a showing that the government has a clear duty to act. According to the government, "the question at hand is whether Defendants have unreasonably delayed providing that service and have a discrete ministerial duty to provide it within a specific time frame." [Gv't Opp., at 2]. At this jurisdictional phase of a §706(1) inquiry, however, that is **not** the question. At this point in time, the only question is whether there is a "clear duty to act."

Because the government has a duty to provide renunciation services, including the scheduling of interviews, the remaining question is whether the government provides these services in a reasonable and timely manner. That question is governed in this Circuit by the so-called *TRAC* factors. *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984).

## 2.  The *TRAC* factors favor Plaintiffs

### (i)      The rule of reason and timetable factors weigh in favor of Plaintiffs

The government argues that COVID-19 restraints – including resource shortages – grant it a blank check to cease providing renunciation services altogether or to provide those services within indefinite time periods by placing applicants on year-long waitlists. [Gv't Opp., at 4-5].

The government describes Plaintiffs' request that they be able to renounce "within weeks or, at the very most, a few months" [Br., at 34] as an "arbitrary standard" that "does not meet the rule of reason." [Gv't Opp., at 5]. But Plaintiffs' request is not "arbitrary." It stems from the importance of the right to renounce, recognized time and time again as a fundamental right under our system of law. [Pls.' Br., at 13-19 and 32-34]. The government utterly ignores this factor.

The government engages in a lengthy, but irrelevant, exposition on the complexity and time-consuming nature of the renunciation process [Gv't Opp., at 6-8; Supp. Benning Decl., ¶¶9-18]. The government lists various activities that consular official performs both prior to and after the interview with the renunciant. The government, however, fails to show why behind-the-scenes renunciation activities consume more resources than other consular services, like NIV applications, which also require the government to perform both pre- and post- interview activities, most of which are far more complex and technical than anything in the renunciation context.

Furthermore, this litigation concerns making renunciation *appointments* faster and more efficient. It does not concern the time and resources necessary to issue a CLN. Consequently, all post-interview activities by consular official are irrelevant.

In their brief, Plaintiffs argued that the rule of reason does not favor the government "because it does not provide any explanation as to why renunciation services for U.S. citizens are a lower priority than non-immigrant visa services for foreign nationals." [Pls.' Br., at 36]. The government concedes that it has continued to provide NIV services and does not dispute that these services are provided at a much faster rate. [Gv't Opp., at 9; *see* Pls.' Mem., at 27; ECF 19-4, 19-5, 19-6]. The government now suggests that Plaintiffs' argument "falsely implies that non-immigrant visa (NIV) services do not benefit U.S. citizens when, in fact, they do." [Gv't Opp., at 9, listing various NIVs that allegedly benefit the U.S. economy and welfare]. Plaintiffs' position is clear: renunciation services for U.S. citizens must be given a higher priority than business and pleasure visas for non-citizens.

The government's decision to give a higher preference to non-citizens is an affront to the basic idea of U.S. citizenship and the fundamental constitutional liberties appurtenant thereto.

### (ii)   The nature of the interest prejudiced and human welfare factors weigh in favor of Plaintiffs

The third and fifth factors require a court to consider the "nature and extent of interests prejudiced by delay" and whether "human health and welfare are at stake." *Pushkar v. Blinken*, 2021 WL 4318116 (D.D.C. Sept. 23, 2021). Here, the

government concedes that Plaintiffs possess a human health and welfare interest in renunciation services.  The government argues, however, that "individuals seeking virtually any other consular service also possess human-health-and-welfare interests" and that increasing "the rate of appointments for CLN services would not, therefore create a net benefit to human health and welfare." [Gv't Opp., at 10]. In making this argument, the government yet again assumes that renunciation services are no different than other consular services, including business-and-pleasure non-immigrant visa services. As already discussed, this assumption is wrong and offensive.[6]

### (iii)   Processing renunciation services without delay will not affect higher priority agency activities

The critical question under the fourth *TRAC* factor is whether the request to expedite the service is at the expense of other *similarly situated applicants.*" *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016) [emphasis added]. Plaintiffs previously argued that *TRAC* factor four favors them because they "request that the Court rule that any delay in processing voluntary renunciation applications – for *all renunciation applicants* – must be reasonable." [Pls.' Br., at 38] [emphasis added]. *See also Hosp. Ass'n,* 812 F.3d at 192 (broad, systematic relief, not precluded under

---

[6] In footnote 2 of its Opposition [Gv't Opp., at 11], the government states that the third and fifth *TRAC* factors are not conditioned on the citizenship of the individuals at issue. Even assuming this legal conclusion is correct, Plaintiffs never made such an argument under the third and fifth factors. Plaintiffs' argument was and remains that because renunciation services toward U.S. citizens involve a fundamental right, they should receive priority over other consular services, which involve few, if any, cognizable civil or human rights.

*TRAC* factor). Other applicants wishing to schedule a renunciation appointment are *similarly situated*. Plaintiffs do not ask the Court to prefer them to other *similarly situated applicants*.

The government urges that this argument "strains logic" because it "assumes that the Department has *extra* resources that it can deploy towards appointments for CLN services at a moment's notice without negatively affecting other consular services. [Gv't Opp., at 12-13]. Plaintiffs make no such assumption. *Am. Hosp. Ass'n* and similar case law cited by Plaintiffs stands for the proposition that the fourth *TRAC* factor will favor a plaintiff when the delay being challenged is "systematic," even if it means that a category of other services – *i.e.*, renunciation services – will be sent to the front of the queue of other *dissimilar* services (such as NIV services), so long as it is not at the expense of other *similarly situated applicants*.  If that were not the case, then the "systematic" component of fourth *TRAC* factor carved out by *Am. Hosp. Ass'n* and similar cases would make no sense, for every "systematic" challenge necessitates reprioritizing the government's resources from other classes of services. The authorities cited by Plaintiffs support this position and it is unclear how the government attempted to distinguish the present case from those authorities.

**(iv)   The agency impropriety factor weighs in favor of Plaintiffs**

The U.S. government is doing everything it can to burden its own citizens' right to voluntarily expatriate. In its opposition, the government denies this point [Gv't Opp., at 15-16]. But the facts– whether it be levying the astronomical $2,350 fee as a precondition to expatriate, implementing wholesale suspensions and indefinite

14

delays, imposing the so-called expatriation tax (26 U.S.C. §877A)— speak louder than the government's self-serving statements in its brief.   *See* Nancy L. Green, *Expatriation, Expatriates, and Expats: The American Transformation of a Concept*, 114 THE AM. HIST. REV. 2 (2009), 307-328 (describing America's historical hostility and suspicion towards expatriates); Eileen P. Scully, BARGAINING WITH THE STATE FROM AFAR: AMERICAN CITIZENSHIP IN TREATY PORT CHINA, 1844-1942, Columbia University Press (2001), at 1-2 (same); Neil Gandal, *Why Does Uncle Sam Hate American Expats?*, Wall Street Journal (Dec. 15, 2014).[7]

Under the guise of COVID-19, the government has found yet another way to prevent its citizenry from cutting its ties with the Republic. This cannot be considered acting in good faith and the government should be instructed to reprioritize its services consistent with the constitution and the fundamental nature of the right to voluntarily expatriate.

C. **THE SUSPENSION VIOLATES 5 U.S.C. §706(2)[8]**

The government has no authority to completely suspend renunciation services for approximately two years. *Gomez v. Trump*, 485 F. Supp. 3d 145, 194 (D.D.C. 2020), *amended in part*, 486 F. Supp. 3d 445 (D.D.C. 2020), *and amended in part sub nom*. *Gomez v. Biden*, 2021 WL 1037866 (D.D.C. Feb. 19, 2021) (suspension of visa processing services was "not in accordance with law" and "in excess of statutory [...]

---

[7]  Available   at   https://www.wsj.com/articles/neil-gandal-why-does-uncle-sam-hate-american-expats-1418687615 (last accessed on June 29, 2022).

[8] As discussed in the opening brief, to the extent the Court concludes that the waitlist policy violates the constitution, it would also violate §706(2).

authority."); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 315 (D.D.C. 2020), *appeal dismissed sub nom. Milligan v. Blinken*, 2021 WL 4768119 (D.C. Cir. Sept. 21, 2021) (same, with regard to K-1 visas).

To exonerate itself from this clear violation of §706(2), the government attempts, once again, to blur the distinction between a formal suspension and a delay, claiming there is no difference between the two, "either legally or practically." [Gv't Opp., at 17]. This argument is meritless, because, as already discussed, the government's two-year suspension meant that it was not scheduling or conducting any renunciation interviews. That is not the same, either legally or practically, as scheduling appointments at a slower rate. *See also Milligan,* 502 F. Supp. 3d (temporary suspension deemed unlawful and distinguished from delay)[9]; *Gomez*, 485 F. Supp. 3d (same).

---

[9] Both *Gomez* and *Milligan* dealt with COVID-19-related Presidential Proclamations that suspended entry of certain classes of foreigners. These Proclamations, by their own terms, were temporary suspensions. *See, for example*, Sec. 5 (Termination) of the Pres. Proc. No. 9984, *Suspension of Entry as Immigrants and Nonimmigrants of Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus and Other Appropriate Measures To Address This Risk*, 85 FR 6709, 2020 WL 552159 (January 31, 2020). According to the government's logic in the present case, this suspension of entry in *Gomez* and *Milligan* should have been construed as a mere delay. This Court, however, viewed the challenged administrative action as suspensions and, as such, illegal.

**CONCLUSION**

For all the reasons set forth above and in Plaintiffs opening brief [ECF 19-1],

the Court is respectfully requested to:

1.      Deny Defendants' motion to dismiss [17];

2.      Deny Defendants' motion for summary judgment [17];

3.      Grant Plaintiffs' cross-motion for summary judgment [ECF 19].


Dated: June 29, 2022


Respectfully submitted,


*/s/ L. Marc Zell*                              */s/ Noam Schreiber*
L. Marc Zell                                    Noam Schreiber, *of counsel*
ZELL & ASSOCIATES INTERNATIONAL                 ZELL, ARON & CO.
ADVOCATES, LLC                                  34 Ben Yehuda St.
1345 Ave. of the Americas                       15th Floor
2nd Floor                                       Jerusalem, Israel 9423001
New York, NY 10105                              011-972-2-633-6300
(202)-971-1349
*Email:* mzell@fandz.com                        *Email:* schreiber.noam@gmail.com

*Counsel for Plaintiffs*

17